FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2001 JUL -5 AM 10: 03
LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

---------------------------- )
**Mildred Henderson**         )     **CIVIL ACTION NO. 01-0138**
**Plaintiff,**                )         **Section R Mag. 2**
                              )
        **versus**            )
                              )
                              )
**Gregory M. Eaton**          )
**Defendant.**                )
---------------------------- )


# MEMORANDUM IN OPPOSTION TO MOTION TO DISMISS


Robert S. Abdalian TA
(LA Bar Number 2281)
337 Metairie Road--3rd Floor
Metairie, LA 70005
504.862.6076

Daria Burgess Diaz (Bar No. 179528)
337 Metairie Road--3rd Floor
Metairie, LA 70005

A. Bowdre Banks Jr. (Bar No. 2725)
650 Poydras Street,  Suite 2700
New Orleans, Louisiana 70130
504-524-7603

*Attorneys For Plaintiffs*

Fee _____
Process _____
X /Dktd _____
___/CtRmDep _____
Doc.No. _____

## *Table of Contents*

**I.      BACKGROUND, FACTS, AND SUBSTANTIVE LAW ..................... 1**

   A.    Type of Case ............................................................... 1

   B.    Plaintiff Commences This Action .................................... 2

      1.    Gravamen of the Complaint ...................................... 2

      2.    Defendant's Modus Operandi ..................................... 3

      3.    The Offending Communications ................................. 3

         a)    Defendant Eaton communications to plaintiff's employer
         attempts to discover from third persons information concerning a
         debtor that goes beyond a permissible FDCPA "location
         information" inquiry ..................................................... 3

      4.    Eaton was at all times a debt collector subject to the FDCPA ..... 4

**II.     ARGUMENT ................................................................. 4**

   A.    General Legal Standards Governing Dismissal for Failure to State a
   Claim ............................................................................ 4

   B.    The Principal Purpose of the FDCPA ............................. 5

   C.    Eaton's letters to Ms. Henderson's Employer are Prohibited
   Communications under the FDCPA ..................................... 7

      1.    The FDCPA strictly circumscribes the permissible scope of a debt
      collectors inquiries to a third party ................................... 7

      2.    THE FDCPA regulates a debt collector's conduct in obtaining of
      location information ..................................................... 8

   D.    Defendant Eaton's Violations of the FDCPA ............................. 10

      1.    Eaton as a matter of routine and practice knowingly violates the
      Fair Debt Collection Practices Act ................................... 13

   E.    An Offer of Judgment Does not Moot this Action ......................... 14

**III.    CONCLUSION .......................................................... 18**

**Exhibits:**

*Exh. A (Eaton Form Letter)* ............................................................................ *A*

*Exh. B (Eaton Form Letter)* ............................................................................ *B*

*Exh. C (Informal FTC Staff Letter—May 1, 1986)* ......................................... *C*

*Exh. D (Declaration of Robert S. Abalian)* ..................................................... *D*

*Exh. E (S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977)* .............................. *E*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

```
----------------------------------)
Mildred Henderson                 )        CIVIL ACTION NO. 01-0138
Plaintiff,                        )            Section R Mag. 2
                                  )
        versus                    )
                                  )
                                  )
Gregory M. Eaton                  )
Defendant.                        )
----------------------------------)
```

## MEMORANDUM IN OPPOSTION TO MOTION DISMISS

Plaintiff Mildred Henderson ("Henderson") submit this Opposition to Defendant Gregory M. Eaton's ("Eaton") Motion to Dismiss on the grounds that Eaton's motion is unsupported and unsupportable under the governing procedural and substantive law.

### I. BACKGROUND, FACTS, AND SUBSTANTIVE LAW

#### A. Type of Case

This is a consumer class action brought on behalf of all persons in the United States who, during the one year prior to the filing of this action, had letters sent to their employers or whose employers are about to receive letters or other communications from Defendant Eaton in substantially the form of Exhibit A and Exhibit B attached to Plaintiff's Complaint [Attached also here as Exh. **A** and Exh. **B**]. Plaintiff Henderson asserts claims under the federal Fair Debt Collection Practices Act, 15

1

U.S.C. § 1692, *et seq.* ("FDCPA") for declaratory and injunctive relief; actual, statutory and punitive damages; costs and attorneys' fees.

## B.    Plaintiff Commences This Action

On January 16, 2001 Plaintiff filed a Class Action Complaint. On April 16, 2001, Plaintiff filed an Amended Complaint. On April 16, 2001, Plaintiff moved for class certification. On April 24, 2001, Plaintiff Henderson supplemented her motion for class certification. The Motion for Class Certification was set to be heard on May 9, 2001. Defendant subsequently answered the Complaint and served a (Rule 68) Offer of Judgment.[1]

### 1.    Gravamen of the Complaint

In summary, the well pleaded allegations of the Complaint contend that Eaton is a debt collector, who improperly communicated with Plaintiff's employer as part of a regular pattern and practice in his activities of collecting consumer debts, or attempting to collect a consumer debt owed to another.

---

[1] It is not proper to file the Offer of Judgment at the time of tender. *See, e.g., Kason v. Amphenol Corp,* 132 F.R.D. 197 (N.D.Ill. 1990); *Nabors v. Texas Co.,* 32 F. Supp. 91 (W.D.La. 1940) ("I believe it was contemplated that the party making the offer should serve it as provided ... if his adversary "serves written notice" of acceptance, it should then be filed; but if unaccepted, all that the offeror need do is to make proof of it at the proper time and save himself in the matter of costs if the recovery does not exceed what was tendered.")

### 2.   Defendant's Modus Operandi

The debt collection was attempted through the use of standard form letters sent to Plaintiff's employer (the "Letters"). The Letters violated the FDCPA in a variety of ways, as set forth in the Complaint and Amended Complaint. The Amended Complaint sets forth Plaintiff's contentions and is summarized below.

### 3.   The Offending Communications

On or about August 28, 2000, Eaton, while attempting to collect a debt allegedly owed by Henderson to Capital One Bank caused a communication ("Eaton Letter 1") to be mailed to the EEOC (Attn. Human Recourses) ("EEOC), Henderson's employer. Amended Complaint ¶15. On or about September 12, 2000, Eaton caused to be mailed to the EEOC a second communication by letter ("Eaton Letter 2") (Exhibit **B**) identical to Eaton Letter 1, except that Eaton Letter 2 had placed upon it in handwriting the words "*9/12 Second Request". The EEOC received Eaton Letter 2 on or about September 14, 2000.

### a) Defendant Eaton communications to plaintiff's employer attempts to discover from third persons information concerning a debtor that goes beyond a permissible FDCPA "location information" inquiry.

Eaton Letter 1 and Eaton Letter 2 request the following from the EEOC.

3

Please verify the employment of the person named above returning this form by facsimile to: (225) 378-3100; or by mail to: P.O. BOX 3001, Baton Rouge, LA 70821-3001.

Eaton Letter 1 and Eaton Letter 2 further requested the following information from the EEOC regarding Henderson:

EMPLOYED (Circle One)    YES    NO    WAGE SCALE:

TYPE OF EMPLOYMENT (Circle One) Full Time  Part Time    Casual

CORPORATE (FULL) NAME OF EMPLOYER

IF TERMINATED, NAME OF PRESENT EMPLOYER

### 4. Eaton was at all times a debt collector subject to the FDCPA

Eaton was acting as a debt collector communicating with a person other than the consumer-debtor (Ms. Henderson's employer—EEOC) for the purpose of acquiring information about the consumer when he forwarded to the EEOC Letters 1 and 2. Exhibit **A** and **B**. As a debt collector, he is subject to the legal constraints of the FDCPA.

## II. ARGUMENT

### A. General Legal Standards Governing Dismissal for Failure to State a Claim

When considering a Rule 12(b)(6) motion to dismiss, the complaint is construed liberally in favor of the plaintiff, taking all facts as true. *See Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Since a Rule 12(b)(6) motion is viewed with disfavor, a complaint may not

4

be dismissed "unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him to relief."
*Id.* (citations omitted). This familiar procedural framework must be
viewed here through the prism of the governing substantive law, the
FDCPA.

### B. The Principal Purpose of the FDCPA

The principal purpose of the FDCPA is to protect a consumer from
direct or indirect collection abuse, including false, deceptive, or unfair
collection methods such as the employer contact employed by Eaton here
that was surely intended to get Eaton results even if it vexed
Ms. Henderson. It is important to underscore that Section 806 of the Act
(15 U.S.C. §1692d) prohibits a debt collector from engaging in any
conduct the natural consequences of which is to harass, oppress or
abuse any person. Eaton's conduct is precisely the type and kind of
conduct that the FDCPA seeks to prevent.

> In enacting the FDCPA, Congress recognized the
>
> > universal agreement among scholars, law enforcement
> > officials, and even debt collectors that the number of
> > persons who willfully refuse to pay just debts is
> > miniscule [sic]. . . . [T]he vast majority of consumers
> > who obtain credit fully intend to repay their debts.
> > When default occurs, it is nearly always due to an
> > unforeseen event such as unemployment,
> > overextension, serious illness, or marital difficulties or
> > divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977
U.S.C.C.A.N. 1695, 1697 (set forth and attached here as Exh. **E**)

Contrary to the suggestion of the Defendant (p. 3 of his Memorandum), the FDCPA is remedial legislation, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. *See N. C. Freed Co. v. Bd. of Governors*, 473 F.2d 1210, 1214 (2d Cir.), *cert. denied*, 414 U.S. 827 (1973) ("Since the statute [Consumer Credit Protection Act] is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated."); accord *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . .").

In addition to "eliminating abusive debt collection practices by debt collectors, "the **FDCPA seeks to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."** 15 U.S.C. § 1692(e). The FDCPA prohibits oppressive, abusive, deceptive or unfair collection tactics by prohibiting certain conduct and by requiring that the consumer be given specific information. It limits the debt collector's communications with third parties and with the consumer under certain circumstances. 15

6

U.S.C. § 1692c. It forbids debt collectors to engage in other harassing or abusive debt collection techniques, § 1692d, and prohibits debt collectors from using false or misleading representations in connection with the collection of a debt. § 1692e. The FDCPA proscribes the use of "unfair or unconscionable" debt collection practices, including debt padding or collecting more than the amount authorized by the agreement creating the debt. § 1692f.

The FDCPA cannot be read in a hypertechnical manner, if anomalous results follow. *See generally Heintz v. Jenkins*, 514 U.S. 2291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The Act must be read consistent with the purposes of the FDCPA. *Id.*

### C. Eaton's letters to Ms. Henderson's Employer are Prohibited Communications under the FDCPA

#### 1. The FDCPA strictly circumscribes the permissible scope of a debt collectors inquiries to a third party

The FDCPA strictly regulates third party communications by debt collectors.

> § 1692c(b) **Communication with third parties**. Except as provided in section 804 [15 USCS § 1692b[2]], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection

---

[2] §1692b concerns the obtaining of **location information**.

with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Section 1692b(c) thus limits communications with third parties to the following:

1.  Where the consumer has given her prior consent to directly to the debt collector to communicate with third parities;

2.  Where the debt collector has the express permission of a court of competent jurisdiction to communicate with third parities;

3.  Where the debt collector acts reasonably necessary to effectuate a postjudgment judicial remedy;

4.  Without consumer consent, court permission, or third party contacts if "reasonably necessary to effectuate a postjudgment judicial remedy," a debt collector's contacts are limited to the consumer's "attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" **except** as provided in section 1692b—*the acquisition of location information*—discussed below.

### 2. THE FDCPA regulates a debt collector's conduct in obtaining of location information

The FDCPA provides a narrow exception to third party contacts by a debt collector when the purpose of the contact is the acquisition of location information. FDCPA, 15 USCS 1692a(7), specifically defines location information:

**The term** "location information" **means a consumer's place of abode and his telephone number at such place, or his place of employment.**

This exception **only** obtains when the debt collector's third party

communication is for the purpose of acquiring location information. The

FDCPA provides:

### 15 USC § 1692b Acquisition of location information

Any debt collector communicating with any person other than the consumer **for the purpose of acquiring location** information about the consumer shall—

> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) **not communicate with any such person more than once** unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
>
> (4) not communicate by post card;
>
> (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and
>
> (6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

9

### D. Defendant Eaton's Violations of the FDCPA

Eaton violated 15 U.S.C. § 1692b of the Fair Debt Collection Practices Act by communicating with EEOC more than once.

Eaton further violated the above provisions of the FDCPA by requesting information from the EEOC that are outside the perimeter of permissible inquiry when a debt collector is seeking "location information" under the FDCPA, including but not limited to inquiring as to Ms. Henderson's "wage scale", type of employment, corporate (full name), and date of termination (if terminated) from employment. Moreover, discovery and disclosure may reveal that Mr. Eaton contact was not for location information, since he had that information before he contacted Ms. Henderson's employer. *See* FTC Official Commentary on the Fair Debt Collection Practices Act, Section 805(b)(2) [53 Fed Reg. 50097-50110 (Dec. 13, 1988), stating:

> **2. Location information. Although a debt collector's search for information concerning the consumer's location (provided in § 804) is expressly excepted from the ban on third party contacts, a debt collector may not call third parties under the pretense of gaining information already in his possession.**

Discovery may reveal that Mr. Eaton had this location information already in hand from credit reporting agencies to which he subscribed, such as TRW or Equifax when he contacted Ms. Henderson, and his contacting EEOC was merely pretext to embarrass, annoy, and vex Ms. Henderson and her employer.

10

Moreover, Defendant's reliance on the FDCPA Staff Opinion Letter (Memorandum p. 6), attached to Defendant's memorandum and attached here to Plaintiff's Memorandum as **Exhibit C** is misplaced. First, the letter states that "[T]his informal opinion represents the Commission staff's current enforcement position and is not binding on the Commission."[3] Second, the FTC Official Commentary on the Fair Debt Collection Practices Act [53 Fed Reg. 50097-50110 (Dec. 13, 1988)], supersedes the cited letter. "The Commission staff is issuing its Commentary on the Fair Debt Collection Practices Act that will supersede all previously issued staff interpretations of the Act. The purpose of the Commentary is to clarify and codify these interpretations." *Id.* Third, even the FTC Official Staff Commentary, as opposed to the even less weighty informal staff letters, may not be entitled to deference when the commentary is at odds with the language of the FDCPA. *See Heintz v. Jenkins,* 514 U.S. 291, 298, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995):

> We cannot give conclusive weight to this statement. The [FTC Official Staff] Commentary of which this statement is a part says that it "is not binding on the Commission or the public." *Id.,* at [Fed. Reg. ] 50101. More importantly, we find nothing either in the Act or elsewhere indicating that Congress intended to

---

[3] It is noteworthy that Congress intended the FDCPA be enforced primarily by private lawsuits: "The committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance." S.Rep. No. 382 at 5. Set forth here as Exh. **E**.

authorize the FTC to create this exception from the Act's coverage--an exception that, for the reasons we have set forth above, falls outside the range of reasonable interpretations of the Act's express language.

Plaintiff argues that this informal staff letter is in conflict with the plain language of the act as to what may be asked of a third party by a debt collector without the consent of the consumer, a court order, or before a judgment has been obtained. Moreover the very letter that the Defendant relies upon states at page 2, ¶2, shows contrary to the assertion of defendant, that it is an impermissible contact under this FTC attorney's interpretation. This paragraph reads:

**As you know, however, sample form accompanying your inquiry contains questions as to whether the consumer is in fact employed or not employed. This constitutes location information as defined by 803(7)** [15 U.S.C. 1692a(7)]. **Therefore, if the collection agency desires to use the form as presently constituted, it must comply with Section 804** [15 U.S.C. 1692b].

**Emphasis supplied (Attached here as Exhibit C).**

The Eaton form (set forth below) in fact asks the employer to inform whether Ms. Henderson is employed or not:

| | | | |
|---|---|---|---|
| EMPLOYED (Circle One)   YES | NO | WAGE SCALE: | |
| TYPE OF EMPLOYMENT (Circle One) Full Time   Part Time | | Casual | |
| CORPORATE (FULL) NAME OF EMPLOYER | | | |
| IF TERMINATED, NAME OF PRESENT EMPLOYER | | | |

12

Accordingly, the FTC staff attorney authority relied upon by the
Defendant Eaton in its memorandum requires the compliance with 15
U.S.C. 1692b, since it seeks to find the consumers place of employment.
The plain language of the statute requires no less: The term **"location
information"** means and is confined by the plain language of the FDCPA
to mean a consumer's place of abode and his telephone number at such
place, or his place of employment. 15 U.S.C. 1692a(7).

It is equally curious that the defendant's would rely on the *Bailey
v. Security National Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998). *Bailey,*
unlike the case here, does not concern a third party contact. *Bailey*
concerns a contact from loan servicer to mortgagee/debtor/consumer.
Indeed, Bailey does not even concern a debt collector, since the
consumer's loan was not in default when the loan servicer obtained it.
*See* 15 U.S.C. 1692a(6)(F)(iii). As noted by the Bailey court, the "plain
language of § 1692a(6)(F) tells us that an individual is not a "debt
collector" subject to the Act if the debt he seeks to collect was not in
default at the time he purchased (or otherwise obtained) it." *Id.* at 387.

### 1. Eaton as a matter of routine and practice knowingly violates the Fair Debt Collection Practices Act

Moreover, Plaintiff is informed and believes that defendant Eaton
as a habit and routine sends out letters in substantially the same form
as Exhibit A and Exhibit B in violation of the FDCPA. Plaintiff is further
informed that Defendant has been alerted to these violations of the

13

FDCPA in the past but continues to flout the FDCPA. *See* Declaration of Robert S. Abdalian attached as Exhibit C to the Plaintiff's Superseding [And Corrected] **Memorandum Of Law In Support Of Plaintiff's Motion For Class Certification** and Attached here as **Exhibit D**. Plaintiff is aware that plaintiff has employed these form letters in the past and is of the further belief that discovery will reveal defendant has used this debt collection practice on scores of other occasions in violation of the FDCPA and must be enjoined from this conduct.

### E. An Offer of Judgment Does not Moot this Action

Defendant attempts to avoid the consequences of his illegal activities by relying on the reasoning found *in v. Rosenblatt*, 194 F.R.D. 451 (D.C.N.Y. 2000), and it progeny. The plaintiff in *Ambalu* brought a class action under the FDCPA. The *Ambalu* court found that since the FDCPA limits recovery to $1,000, the defendant mooted the class action by making a Rule 68 Offer of Judgment for $1,000 plus attoneys' fees and costs because this would satisfy the individual plaintiff's entire demand. Plaintiff observes that the *Ambalu* plaintiff, unlike the plaintiff *sub judice*, did not allege actual damages. Plaintiff also observes that Defendant Eaton's offer **did not** include actual damages in his Offer of Judgment. In addition, Plaintiff here seeks class injunctive relief fConsequently, and contrary to Defendant's argument, plaintiff has not been offered all that she may recover under the FDCPA claims alleged. Accordingly, the Eaton's mootness argument fails. In addition, the

14

*Ambalu* court acknowledged that Rule 68 might not be applicable to a class action after certification of the class (in the case *sub judice* a motion for class certification was pending before the Offer of Judgment was forthcoming). At the time of the *Ambalu* offer, no class had been certified and, unlike the case here, no motion to certify the class had been made.

*Silva v. Nat'l Telewire Corp.*, 48 Fed. R. Serv. 3d 306 (D.N.H. 2000) is instructive. In *Silva,* Defendant sent out form debt collection letters that allegedly violated the FDCPA. Plaintiff Silva sought a declaratory judgment that the letters violated the act, statutory damages, attorneys' fees, and costs. Plaintiff Silva also sought class certification for all New Hampshire persons who received defendant's letter. In ruling on the parties' cross-motions, the court held, among other rulings, that plaintiff's mistaken acceptance of defendant's offer of judgment on behalf of the class could not be the basis of a motion to compel plaintiff's acceptance and dismiss the case. This was so, because the class had not yet been certified. The *Silva* Court cited *Ambalu* and reasoned:

> Because the proposed class has not yet been certified, there is no existing class on whose behalf the plaintiff could accept an offer of judgment, if such had been made. *See* Fed. R. Civ. P. 23(c)(1). On the other hand, it would be inappropriate to compel the plaintiff to settle his individual claim against the defendant while the issue of class certification is pending. *See, e.g., Greisz v. Household Bank, N.A.,* 176 F.3d 1012, 1015 (7th Cir. 1999); ***Ambalu v. Rosenblatt***, 194 F.R.D. 451, 453 (E.D.N.Y. 2000); *Caston v. Mr. T's Apparel, Inc.*, 157 F.R.D. 31, 32-33 (S.D. Miss. 1994). Therefore, as the plaintiff's claim was not resolved by the defendant's offer of

15

judgment, a live controversy remains in the case, and the defendant's motion to dismiss is denied.

Practice in the courts of Fifth Circuit is in accord. *Martin v. Mabus*, 734

F.Supp. 1216, 1222 (D.C.Miss. 1990) (per Chief Judge Barbour):

> [I]n this rule 23(b)(2) class action, the procedures prescribed by rule 68 for making an offer of judgment are literally inapplicable because rule 23(e) requires that court approval be obtained in order for a case to be dismissed or compromised. *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 86 F.R.D. 500 (N.D.Cal. 1980); Fed. R. Civ. P. 23(e). ... [I]n complex cases such as the one *sub judice*, involving injunctive relief, there is a fundamental question whether rule 68 may, under any circumstances, properly foreclose the recovery of statutory attorney's fees. *See Marek*, 473 U.S. at 32-33 n. 48 (Brennan, J., dissenting); *Garrity v. Sununu*, 752 F.2d 727 (1st Cir. 1984) (court noted in *dicta* that rule 68 is usually invoked where offer and judgment "involve two precise and easily comparable sums of money," rather than choice between different sets of injunctive provisions whose relative benefit to the plaintiffs cannot be assessed in monetary terms).

*Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 86 F.R.D.

500 (N.D.Cal. 1980), is an especially compelling opinion by Judge

Schwartzer, who served as the Director of the Federal Judicial Center

from 1990 to 1995. Judge Schwartzer in *Gay v. Waiters' & Dairy*

*Lunchmen's Union, Local No. 30,* observed:

> An offer of judgment made to a class representative raises difficulties not present where the offeree acts only on his own behalf. As in all other stages of a class action, the Court must consider the potential impact on absent class members. The same coerciveness that, when directed against a party suing in his own behalf, serves the purpose of judicial economy by raising the ante has an added effect in a class action: it introduces a potential conflict between the named party's self-interest and his fiduciary duty to the class.

An offer of judgment forces an individual offeree to weigh his own exposure to liability for the offeror's subsequent costs against his own expected recovery, thereby encouraging a close evaluation of the merits of his claim. If the same procedure were imposed in class actions, the representative as offeree would be forced to balance his personal liability for costs against the prospects of sharing with the class in any recovery. His evaluation of the offer would therefore be tinged by self-interest and would tend to differ from that of absent class members. Where the class representative's potential liability for costs is substantial compared to his personal stake in a successful outcome, an inherent conflict of interest is created by the mandatory operation of Rule 68. In the present case, the disparity between the magnitude of the personal risk and the likely benefit in the event of a favorable outcome was substantial for several reasons. First, injunctive relief benefiting mainly future black job applicants was an important element of the relief sought. Second, the representatives may have been only a small fraction of the probable class membership which would share in any monetary award. Third, the amount of costs that defendants could have been expected to incur following the offers was substantial. If operation of Rule 68 were mandatory in circumstances such as these, it would create a strong incentive on the part of the class representative to accept an offer which, had his exposure been fully shared by the entire class, he would have rejected.

...

[T]he Court concludes that enforcement of Rule 68 may, in cases such as this, conflict with the policies and principles underlying Rule 23 and statutes enforced by class actions. [footnotes omitted]

Plaintiff further believes that *Ambalu* is wrongly decided, is

contrary to the better view, and places the plaintiff and her attorney in

potentially compromising position. In addition, *Ambalu* may be

distinguished because the *Ambalu* plaintiff, unlike the plaintiff here,

failed to move for class certification before Defendant made an Offer of

Judgment.

17

## III.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the motion to dismiss be denied.

Respectfully submitted.

Robert S. Abdalian

Robert S. Abdalian, TA (Bar No. 2281)
337 Metairie Road--3rd Floor
Metairie, LA 70005
504.862.6076

Daria Burgess Diaz (Bar No. 179528)
337 Metairie Road--3rd Floor
Metairie, LA 70005

A. Bowdre Banks Jr. (Bar No. 2725)
650 Poydras Street,  Suite 2700
New Orleans, Louisiana 70130
504-524-7603
Attorneys For Plaintiffs

18

EXHIBITS

August 28, 2000

EEOC
Attn: Human Resources
701 LOYOLA AVE
NEW ORLEANS, AL 70113

MILDRED HENDERSON
SS #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
185092-13

Please verify the employment of the person named above by returning this form by facsimile to.

225-378-3100; or by mail to: P.O Box 3001, Baton Rouge, LA 70821-3001.

EMPLOYED (Circle One)        YES        NO        WAGE SCALE. _____

TYPE OF EMPLOYMENT (Circle One)        FULL-TIME        PART-TIME        CASUAL

CORPORATE (FULL) NAME OF EMPLOYER _____

IF TERMINATED, NAME OF PRESENT EMPLOYER _____

THANK YOU,

Gregory M. Eaton
225-378-3113

Exhibit A

August 28, 2000

X 9/12   Second Request

EEOC
Attn: Human Resources
701 LOYOLA AVE
NEW ORLEANS, AL 70113

MILDRED HENDERSON
SS #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
165092-13

Please verify the employment of the person named above by returning this form by facsimile to 225-378-3100; or by mail to: P.O. Box 3001, Baton Rouge, LA 70821-3001.

EMPLOYED (Circle One)          YES          NO          WAGE SCALE _____

TYPE OF EMPLOYMENT (Circle One)          FULL-TIME          PART-TIME          CASUAL

CORPORATE (FULL) NAME OF EMPLOYER _____

IF TERMINATED, NAME OF PRESENT EMPLOYER _____

THANK YOU,

Gregory M. Eaton
225-378-3113

035489          33

# Exhibit B

## FEDERAL TRADE COMMISSION
### WASHINGTON, D. C. 20580

BUREAU OF
CONSUMER PROTECTION

May 1, 1986

Mr. Jack D. Cope
Examiner
Division of Consumer Credit
Office of Commissioner of Banking
State of Wisconsin
P.O. Box 7876
Madison, Wisconsin  53707-7876

Dear Mr. Cope:

Your letter to Mr. Tom Jefferson of our Chicago Regional
Office has been forwarded to this office for a reply.  In your
letter you have noted that Section 427.104(1)(d) of the Wisconsin
Debt Collection Act and Rule Bkg. 74.14(4) of the Office of the
Wisconsin Commissioner on Banking permit communication with the
debtor's employer by a debt collector solely to verify employment
status or earnings.  You note, however, that Section 803(7) of the
Fair Debt Collection Practices Act ("Act") which defines location
information, appears not to permit the verification of earnings as
permitted by the Wisconsin rules and regulations.  You have
requested clarification of this matter.

Section 804 of the Act sets forth rules concerning debt
collector contacts with third parties "for the purpose of acquiring
location information" (emphasis mine).  Section 803(7) defines the
term "location information" as a consumer's place of abode, his
telephone number at such place, or his place of employment.  It is
our opinion that this definition includes only a residence address,
home phone number place of employment.  It does not cover such non-
location information as work phone numbers, names of supervisors,
their telephone numbers, salaries, dates of paydays, or dates
employment commenced or terminated.

An employer contact for the purpose of acquiring information
other than location information falls within the more general
purview of Section 805(b).  Such a contact would appear to be
permitted:

§ 805(b).  Except as provided in section 804,
without the prior consent of the consumer given
directly to the debt collector, or the express
permission of a court of competent jurisdiction, or
as reasonably necessary to effectuate a postjudg-
ment judicial remedy, a debt collector may not
communicate, in connection with the collection of
any debt, with any person other than the consumer,

## Exhibit C (Opposition to Motion to Dismiss)

his attorney, a consumer reporting agency if
otherwise permitted by law, the creditor, the
attorney of the creditor, or the attorney of the
debt collector.

The application of Section 805(b) to such a contact hinges on
the how the word "communicate" is defined.  Section 803(2) defines
the term "communication" as "the conveying of information regarding
a debt directly or indirectly to any person through any medium."  A
request directed to an employer for information such as "date
started", "date terminated" or "monthly earnings", without more,
would not fall within the definition of "communication"  since it
does not itself convey any information regarding the debt at issue
to the employer, e.g. identify the firm by name or mention the debt
itself.  Since such a contact is not a "communication," under the
Act, it is not covered by Section 805(b) and is not prohibited by
that Section.

As you know, however, sample form accompanying your inquiry
contains questions as to whether the consumer is in fact employed
or not employed.  This constitutes location information as defined
by 803(7).  Therefore, if the collection agency desires to use the
form as presently constituted, it must comply with Section 804.

We hope these comments are helpful.  This informal opinion
represents the Commission staff's current enforcement position and
is not binding on the Commission.

Sincerely,

Cynthia S. Lamb
Research Anaylst
Division of Credit Practices

Roger J. Fitzpatrick
Attorney
Division of Credit Practices

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

```
------------------------------  )
Mildred Henderson               )      CIVIL ACTION NO. 01-0138
Plaintiff,                      )          Section R Mag. 2
                                )
        versus                  )
                                )
                                )
Gregory M. Eaton  )
Defendant.                      )
------------------------------  )
```

### Declaration of Robert S.Abdalian

1. Declarant is trial attorney of record in the case sub judice.

2. Declarant is a member of the Bar of this Court, Bar of the United States Court of Appeals for the Fifth Circuit, Bar of the Supreme Court of Minnesota, the Bar of the Supreme Court of Minnesota, and the Bar of the United States Supreme Court.

3. Declarant has been an attorney for over 25 years.

4. Declarant is experienced in federal civil litigation.

5. Declarant was counsel of record in *Hayfield N. R. Co. v. Chicago & North Western Transp. Co.*, 467 U.S. 622, 81 L. Ed. 2d 527, 1984 U.S. LEXIS 109, 104 S. Ct. 2610, 52 U.S.L.W. 4783 (1984).

6. Declarant has written on federal civil litigation.

7. Wright, Miller & Cooper, Federal Practice and Procedure, §3573, at n. 1, observe there is a "a large literature on this branch of jurisdiction [civil rights]. The following are recent discussions of particular value....**Abdalian**[1] **& Lachman,** *Federal Courts and Small Claims:*

---

[1] This article was co-written by your Declarant.

**Exhibit C**                                                    **Page 1 of 2**

**Exhibit D (Opposition to Motion to Dismiss)**

*Prisoners Section 1983 Actions and Section 1983,* 33 Ark. L. Rev. 91

(1979)."

8. You declarant is acting as liaison counsel in litigation currently pending

in St. John the Baptist Parish, styled as follows:

*Joseph Smith, et al v. South Louisiana Port Commission, Operating as the Port of South Louisiana,* 40th JDC No. 40295, Div. "A" and consolidated cases

9. The Globalplex Litigation involves over 4,000 plaintiffs and several

parties defendant.

10. Declarant has personal knowledge that Defendant Eaton in 1996 used

the same illegal collection activities complained of in the Complaint

herein, *i.e.,* improperly contacting and recontacting a third person and

making impermissible inquiries concerning a debtor in his efforts to

collect the debt of another.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: April 24, 2001

Robert S. Abdalian

**Exhibit C**                                                      **Page 2 of 2**

**Exhibit D (Opposition to Motion to Dismiss)**

# Senate Report No. 95-382 on the FDCPA

*Page 1*

The Committee on Banking, Housing, and Urban Affairs, to which was referred the bill (H.R. 5294) to amend the Consumer Credit Protection Act to prohibit abuses by debt collectors, having considered same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

## HISTORY OF THE LEGISLATION

On May 12 and 13, 1977, the Consumer Affairs Subcommittee held hearings on four bills to regulate debt collection practices: S. 656, introduced by Senator Biden; S. 918, introduced by Senator Riegle; S. 1130, introduced by Senator Garn for himself and Senators Schmitt and Tower; and H.R. 5294, passed by the House of Representatives on April 4, 1977. After these hearings and before markup by the committee, Senator Riegle offered a composite bill, designated Committee Print No. 1, as a substitute for S. 918.

The Committee met in open markup sessions on June 30 and July 26, 1977, and approved Committee Print No. 1, with amendments, by voice vote. The committee substituted the text of its bill for that of H.R. 5294, which is herewith reported without objection.

## NATURE AND PURPOSE OF THE BILL

This legislation would add a new title to the Consumer Credit Protection Act entitled the Fair Debt Collection Practices Act. Its purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary [*Page 2*] restrictions on ethical debt collectors. This bill was strongly supported by consumer groups, labor unions, State and Federal law enforcement officials, and by both national organizations which represent the debt collection profession, the American Collectors Association and Associated Credit Bureaus.

## NEED FOR THIS LEGISLATION

The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem. Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Debt collection by third parties is a substantial business which touches the lives of many Americans. There are more than 5,000 collection agencies across the country, each averag-

ing 8 employees. Last year, more than $5 billion in debts were turned over to collection agencies. One trade association which represents approximately half of the Nation's independent collectors states that in 1976 its members contacted 8 million consumers.

Hearings before the Consumer Affairs Subcommittee revealed that independent debt collectors are the prime source of egregious collection practices. While unscrupulous debt collectors comprise only a small segment of the industry, the suffering and anguish which they regularly inflict is substantial. Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them. Collection agencies generally operate on a 50-percent commission, and this has too often created the incentive to collect by any means.

The primary reason why debt collection abuse is so widespread is the lack of meaningful legislation on the State level. While debt collection agencies have existed for decades, there are 13 States, with 40 million citizens, that have no debt collection laws. These States are Alabama, Delaware, Georgia, Kansas, Kentucky, Mississippi, Missouri, Montana, Ohio, Oklahoma, Rhode Island, South Carolina, and South Dakota. Another 11 States (Alaska, Arkansas, Indiana, Louisiana, Nebraska, New Jersey, Oregon, Pennsylvania, Utah, Virginia and Wyoming), with another 40 million citizens, have laws which in the committee's opinion provide little or no effective protection. Thus, 80 million Americans, nearly 40 percent of our population, have no meaningful protection from debt collection abuse.

While 37 States and the District of Columbia do have laws regulating debt collectors, only a small number are comprehensive statutes which provide a civil remedy. As an example of ineffective State laws, of the 16 states which regulate by debt collection boards, 12 require by law that a majority of the board be comprised of debt collectors.

The Committee has found that collection abuse has grown from a State problem to a national problem. The use of WATS lines by debt collectors has led to a dramatic increase in interstate collections. State [*Page 3*] law enforcement officials have pointed to this development as a prime reason why federal legislation is necessary, because State officials are unable to act against unscrupulous debt collectors who harass consumers from another State.

One of the most frequent fallacies concerning debt collection legislation is the contention that the primary beneficiaries are "deadbeats." In fact, however, there is universal agreement among scholars, law enforcement officials, and even debt col-

lectors that the number of persons who willfully refuse to pay just debts is miniscule. Prof. David Caplovitz, the foremost authority on debtors in default, testified that after years of research he has found that only 4 percent of all defaulting debtors fit the description of "deadbeat." This conclusion is supported by the National Commission on Consumer Finance which found that creditors list the willful refusal to pay as an extremely infrequent reason for default.

The Commission's findings are echoed in all major studies: the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

The committee believes that the serious and widespread abuses in this area and the inadequacy of existing State and Federal laws make this legislation necessary and appropriate.

## EXPLANATION OF THE LEGISLATION

*Scope of the act*

This bill applies only to debts contracted by consumers for personal, family, or household purposes; it has no application to the collection of commercial accounts.

The committee intends the term "debt collector," subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business. The definition would include "reciprocal collections" whereby one creditor regularly collects delinquent debts for another pursuant to a reciprocal service agreement, unless otherwise excluded by the act.

The term debt collector is not intended to include the following: "in house" collectors for creditors so long as they use the creditor's true business name when collecting; Government officials, such as marshals and sheriffs, while in the conduct of their official duties; process servers; nonprofit consumer credit counseling services which assist consumers by apportioning the consumer's income among his creditors pursuant to a prior arrangement; and attorneys-at-law while acting in that capacity. One subsidiary or affiliate which collects debts for another subsidiary or affiliate is not a "debt collector" so long as the collecting affiliate collects only for other related entities and its principal business is not debt collection.

Finally, the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; mortgage service com- *[Page 4]* panies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing; and the collection of debts owed to a creditor when the collector is holding the receivable account as collateral for commercial credit extended to the creditor.

*Obtaining location information*

While this legislation strongly protect's the consumer's right to privacy by prohibiting a debt collector from communicating the consumer's personal affairs to third persons, the committee also recognizes the debt collector's legitimate need to seek the whereabouts of missing debtors. Accordingly, this bill permits debt collectors to contact third persons for the purpose of obtaining the consumer's location. In seeking this information, however, the debt collector must observe certain guidelines: he may not state that the consumer owes a debt nor contact third persons more than once unless necessary to obtain complete information. In addition, a debt collector may not place language or symbols on mail to third persons indicating that the mail relates to debt collection nor continue to contact third parties after learning the name and address of the consumer's attorney, unless the attorney fails to respond to the debt collector's communications.

*Prohibited practices*

This legislation expressly prohibits a host of harassing, deceptive, and unfair debt collection practices. These include: threats of violence; obscene language; the publishing of "shame lists;" harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks. In addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.

In addition, this legislation adopts an extremely important protection recommended by the National Commission on Consumer Finance and already the law in 15 States: it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.

*Validation of debts*

Another significant feature of this legislation is its provision requiring the validation of debts. After initially contacting a consumer, a debt collector must send him or her written notice stating the name of the creditor and the amount owed. If the consumer disputes the validity of the debt within 30 days, the debt collector must cease collection until he sends the consumer verification.

This provision will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. Since the current practice of most debt collectors is to send similar information to consumers, this provision will not result in additional expense or paperwork. *[Page 5]*

*Legal actions by debt collectors*

This legislation also addresses the problem of "forum abuse," an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. As a result, the debt collector obtains a default judgment and the consumer is denied his day in court.

In response to this practice, the bill adopts the "fair venue standards" developed by the Federal Trade Commission. A

**Exhibit E (Opposition to Motion to Dismiss)**          2

debt collector who files suit must do so either where the consumer resides or where the underlying contract was signed. When an action is against real property, it must be brought where such property is located.

More than 1,000 collection agencies in all 50 States have already voluntarily agreed to follow these standards. The Commission reports that this standard is effective in curtailing forum abuse without unreasonably restricting debt collectors.

*Furnishing deceptive forms*

Another common collection abuse is known colloquially as "flat-rating." A "flat-rater" is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt. In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters.

This bill prohibits the practice of flat-rating because of its inherently deceptive nature. The prohibition on furnishing such forms does not apply, however, to printers and custom stationery sellers who innocently print or sell such forms without knowledge of their intended use.

*Civil liability*

The committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance.

A debt collector who violates the act is liable for any actual damages he caused as well as any additional damages the court deems appropriate, not exceeding $1,000. In assessing damages, the court must take into account the nature of the violation, the degree of willfullness, and the debt collector's persistence. A debt collector has no liability, however, if he violates the act in any manner, including with regard to the act's coverage, when such violation is unintentional and occurred despite procedures designed to avoid such violations. A debt collector also has no liability if he relied in good faith on an advisory opinion issued by the Federal Trade Commission.

As in all other Federal consumer protection legislation, a consumer who obtains judgment on his behalf is entitled to attorney's fees and costs. In order to protect debt collectors from nuisance lawsuits, if the court finds that an action was brought by a consumer in bad faith and for harassment, the court may award the debt collector reasonable attorney's fees and costs.

*Administrative enforcement*

This legislation is enforced administratively primarily by the Federal Trade Commission. If a depository institution subject to regulation by another Federal agency engages in debt collection, administrative enforcement authority is lodged with that agency. [*Page 6*]

All enforcement agencies are authorized to utilize all their functions and powers to enforce compliance. The Federal Trade Commission is authorized to treat violations of the act as violations of a trade regulation rule, which empowers the Commission to obtain restraining orders and seek fines in federal district court.

Because the committee regards this as comprehensive legislation which fully addresses the problem of collection abuses, the administrative agencies charged with enforcement are spe-

cifically prohibited from issuing additional rules or regulations applicable to persons covered by this legislation.

*Relation to State law*

The Committee believes that this law ought not to foreclose the States from enacting or enforcing their own laws regarding debt collection. Accordingly, this legislation annuls only "inconsistent" State laws, with stronger State laws not regarded as inconsistent. In addition, States with substantially similar laws may be exempted from the act's requirements (but not its remedies) by applying to the Federal Trade Commission.

### COST OF THIS LEGISLATION

Enactment of this legislation will result in no new or additional costs to the Federal Government. The Congressional Budget Office analysis of this bill is contained in the following letter:

CONGRESSIONAL BUDGET OFFICE,
U.S. CONGRESS,
*Washington, D.C., July 27, 1977.*

HON. WILLIAM PROXMIRE,
*Chairman, Committee on Banking, Housing, and Urban Affairs,*
*U.S. Senate, Washington, D.C.*

DEAR MR. CHAIRMAN: Pursuant to section 403 of the Congressional Budget Act of 1974, the Congressional Budget Office has reviewed H.R. 5294, a bill to amend the Consumer Credit Protection Act to prohibit abusive practices by debt collectors, as ordered reported by the Senate Committee on Banking, Housing and Urban Affairs, July 26, 1977.

Based on this review, it appears that no additional cost to the Government would be incurred as a result of enactment of this bill.

Sincerely,

Alice M. Rivlin, *Director.*

### CHANGES IN EXISTING LAW

In the opinion of the Committee, it is necessary to dispense with the requirements of subsection 4 of Rule XXIX of the Standing Rules of the Senate in order to expedite the business of the Senate. [*Page 7*]

### SECTION-BY-SECTION SUMMARY

*Section 801. Short title.*—The act may be cited as the "Fair Debt Collection Practices Act."

*Section 802. Findings and purpose.*—The Congress finds that collection abuses by independent debt collectors are serious and widespread and that existing State laws are inadequate to curb these abuses. The purpose of the title is to eliminate abusive practices, not disadvantage ethical debt collectors, and promote consistent state action.

*Section 803. Definitions.*—The term "debt collector" is defined to include all third parties who regularly collect consumer debts for others, except for the following persons: "in house" collectors for creditors; affiliates collecting for one another, providing that collection is not the principal business of the affiliate; Government officials collecting in their official capacities; process servers; bona fide consumer credit counseling

**Exhibit E (Opposition to Motion to Dismiss)**                    3

services; and attorneys-at-law. The term also does not include trust companies and other bona fide fiduciaries; persons collecting loans which they originated; persons who service debts for others; and persons holding receivables as collateral for commercial credit transactions.

*Section 804. Acquisition of location information.*—When contacting third persons to establish a consumer's whereabouts, a debt collector may not: state that the consumer owes a debt; contact the third person more than once unless reasonably necessary; or use language symbols on mail indicating that it pertains to debt collection. A debt collector may not contact a third person if the debt collector knows that the consumer is represented by an attorney and has the attorney's name and address.

*Section 805. Communication in connection with debt collection.*—Without the consumer's consent, a debt collector may not (a) contact a consumer at any unusual or inconvenient time or place (8 a.m. to 9 p.m. is considered convenient); (b) contact a consumer if he is represented by an attorney; or (c) call a consumer at work if the debt collector knows the consumer's employer prohibits such calls.

There is a general prohibition on contacting any third parties (other than to obtain location information) except for: the consumer's attorney; a credit reporting agency; the creditor; the creditor's or debt collector's attorney; or any other person to the extent necessary to effectuate a postjudgment judicial remedy.

If a consumer notifies a debt collector in writing that he refuses to pay a debt or wishes the debt collector to cease further contacts, the debt collector must cease communications except to notify the consumer of the debt collector's or creditor's possible further actions.

*Section 806. Harassment or abuse.*—A debt collector is prohibited from engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person. The following enumerated practices are violations: threats of violence; use of profane or obscene language; publishing "shame lists"; repeated telephone calls intended *[Page 8]* to annoy or harass; and making telephone calls without disclosing the caller's identity.

*Section 807. False or misleading representations.*—A debt collector is prohibited from using any false, deceptive or misleading representations to collect debts. The following enumerated practices are violations: misrepresenting that a debt collector is a government official; misrepresenting the amount or nature of a debt; impersonating an attorney; misrepresenting that a consumer will be arrested or his property seized; misrepresenting a consumer's legal rights; deliberately communicating false credit information; utilizing bogus legal documents; and misrepresenting a collection agency as a credit bureau.

*Section 808. Unfair practices.*—A debt collector is prohibited from using any unfair or unconscionable means to collect debts. The following enumerated practices are violations: collecting amounts in excess of the debt or interest owed; causing charges for communications to be billed to a consumer; repossessing property if there is no valid security interest or if it is exempt by law from repossession; communicating information about a debt by postcard; and using symbols on envelopes indicating that the contents pertain to debt collection.

*Section 809. Validation of debts.*—Within 5 days after contacting a consumer, the debt collector must in writing notify the consumer of the amount of the debt and the name of the creditor and advise the consumer of the debt collector's duty to verify the debt if it is disputed. If a consumer disputes a debt within 30 days, the debt collector must stop collection until verification is sent to the consumer.

*Section 810. Multiple debts.*—A debt collector is prohibited from applying payments to disputed debts and, where applicable, must apply payments in accordance with the consumer's directions.

*Section 811. Legal actions by debt collectors.*—Actions on real property are required to be brought in the judicial district in which the property is located. In personal actions, suits must be brought either where the contract was signed or where the consumer resides.

*Section 812. Furnishing certain deceptive forms.*—It is made unlawful to compile, design, and furnish forms knowing that they will be used to create the false impression that a third person is collecting a debt.

*Section 813. Civil liability.*—A debt collector who violates the Act is liable for actual damages plus costs and reasonable attorney's fees. The court may award additional damages of up to $1,000 in individual actions, and in class actions, up to $500,000 or 1 percent of the debt collector's net worth, whichever is less.

Two defenses are provided: good faith reliance on an F.T.C. advisory opinion; and bona fide error notwithstanding procedures to avoid the error. Where a court finds that a suit was brought by a consumer in bad faith and for harassment, the court may award reasonable attorney's fees to the defendant.

Jurisdiction for actions is conferred on U.S. district and state courts; there is a 1 year statute of limitations.

*Section 814. Administrative enforcement.*—The Act is administratively enforced by the F.T.C. and the Federal bank regulatory agencies. The agencies are empowered to use all their functions and powers to enforce compliance. The agencies are prohibited from promulgating any additional rules or regulations pertaining to debt collectors. *[Page 9]*

*Section 815. Reports to Congress by the Commission.*—The F.T.C. shall provide annual reports to Congress on the Act's effectiveness and administrative enforcement.

*Section 816. Relation to State laws.*—The act annuls state laws only if inconsistent; a state law is not inconsistent if it provides greater protection than this title.

*Section 817. Exemption for State regulation.*—The F.T.C. may exempt from the Act any collection practices within any State if subject to substantially similar requirements.

*Section 818. Effective date.*—The act is effective 6 months from enactment.

## ADDITIONAL VIEWS OF MESSRS SCHMITT, GARN AND TOWER

It is our view that the Fair Debt Collection Practices Act is an unwarranted Federal intrusion into an area best left to the States. Although we recognize that some debt collectors employ unconscionable practices in collecting debts, we do not feel that the hearings in either the House or Senate subcommittees produced substantial evidence that there is a serious national problem which justifies such detailed Federal regulation of the operation of the business of collecting debts. A far

**Exhibit E (Opposition to Motion to Dismiss)**          4



better approach is that contained in S. 1130 which would preserve the States' prerogative of providing a mechanism for the resolution of disputes between debtors and creditors while correcting identified abuses in irresponsible debt collectors operating in interstate commerce. According to an American Bar Association committee, 33 States have already adopted debt collection practices regulation and others are moving in that direction.

Of particular concern to us is the impact that the proliferation of Federal consumer credit regulation is having on small business and on the cost and availability of credit to the consumer. A Federal Fair Debt Collection Practice Act will be one more regulatory burden on small business, the cost of which will be borne by the consumer.

Although we would not take the approach chosen by the majority of the committee, the committee report is a vast improvement over H.R. 5294 passed by the House. We are pleased that the committee included in its final version of the bill many provisions contained in S. 1130. Most important, it dropped the $100 minimum civil penalty provision which courts have construed as requiring the award of the penalty and attorneys fees when a violation of the Act has been established.

This should go a long way in avoiding the type of nuisance suits so prevalent under the Truth in Lending Act.

Harrison Schmitt.
Jake Garn.
John Tower.

**Exhibit E (Opposition to Motion to Dismiss)**          5

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

-------------------------------  )
**Mildred Henderson**             )     **CIVIL ACTION NO. 01-0138**
**Plaintiff,**                    )          **Section R Mag. 2**
                                  )
    **versus** )
                                  )
                                  )
**Gregory M. Eaton**              )
**Defendant.**                    )
-----------------------------  )

### CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISSS

to be served upon all counsel of record, by hand this **July 5, 2001**:

ROBERT S. ABDALIAN

_____

Robert S. Abdalian, TA #2281
337 Metairie Road—Third Floor
Metairie, Louisiana  70005
Telephone: (504) 862-6076
Attorney for Plaintiff Black Crystal