

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2002 OCT 25 P 3: 16

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


MILDRED HENDERSON                       CIVIL ACTION

VERSUS                                  NO: 01-0138

GREGORY M. EATON                        SECTION: "R"(2)


## ORDER AND REASONS

Before the Court is the parties' joint motion for final approval of class action settlement and administration, including attorney's fees and costs and incentive compensation to the named plaintiff. For the following reasons, the Court APPROVES the parties' settlement agreement.

### I.  BACKGROUND

On January 16, 2001, plaintiff Mildred Henderson brought suit under the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692, *et seq.*, against defendant Gregory Eaton. Plaintiff alleged that the defendant is a debt collector who violated the FDCPA by communicating with her employer, the

DATE OF ENTRY
OCT 2 8 2002

Fee_____
Process____
X  Dktd____
CtRmDep___
Doc.No.____

Equal Employment Opportunity Commission, more than once, and by requesting information from her employer that was outside the scope of permissible inquiry under the Act. Specifically, plaintiff alleged that defendant sent two letters to her employer in violation of the Act, asking for confirmation of her employment, her wage scale, type of employment, and the full name of her current employer if she had been terminated. She asserted that the letters were written as part of an effort to collect a debt owed by plaintiff to Capital One Bank. Plaintiff sought a declaratory judgment that the defendant's conduct violated the FDCPA, declaratory and injunctive relief for defendant's violations, actual damages, statutory damages pursuant to 15 U.S.C. § 1692k, and attorney's fees.

On April 16, 2001, plaintiff moved to certify a class of all persons in Louisiana who, during the one year prior to the filing of this action, had similar letters sent to their employers from defendant. On May 2, 2001, defendant submitted an offer of judgment of $1000 to plaintiff pursuant to Rule 68 of the Federal Rules of Civil Procedure. The $1000 was the maximum amount plaintiff as an individual could recover under the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A). Plaintiff did not respond to the offer.

On June 25, 2001, defendant moved to dismiss under Federal Rules of Civil Procedure 12(b)(6), asserting failure to state a

claim under the FDCPA, and under Federal Rules of Civil Procedure 12(b)(1), claiming a lack of subject matter jurisdiction.  The Court denied defendant's motion to dismiss on both grounds.

On January 2, 2002, the Court granted plaintiff's motion for class certification, finding that plaintiff met the standards of Federal Rules of Civil Procedure Rule 23(a) and 23(b).  The class consists of about 142 persons.  The parties began settlement discussions with a magistrate judge on June 18, 2002, which culminated in a settlement agreement.  Pursuant to the proposed settlement, defendant agreed to: pay $3,000 to the class members, to be divided on a pro-rata basis; pay $3,000 to plaintiff in settlement of her individual non-class claims; pay $20,000 for reasonable attorney's fees and costs under 15 U.S.C. § 1692k; refrain from the debt collection activity at issue in the lawsuit; and bear the costs of class settlement notice and distribution of funds to class members.  Individually and on behalf of the class, plaintiff agreed to release defendant from all claims, rights, and causes of action, state or federal, including but not limited to claims arising under the FDCPA.

On July 19, 2002, the Court issued an order granting preliminary approval of the class settlement and ordering notice to all class members, in accordance with Federal Rule of Civil Procedure 23(e).  The Court ordered that any objections or opt-

3

outs be submitted in writing to plaintiff's counsel by August 20, 2002.  The parties submitted a joint report on September 4, 2002, attesting to their compliance with the Court's order on notice and stating they had received no objections or opt-outs.

On September 4, 2002, the Court held a final fairness hearing for the purpose of receiving and ruling on any objections or opt-outs.  There were no objections or opt-outs, and the Court ordered the parties to submit a joint, final report on the fairness, adequacy, and reasonableness of the proposed settlement, of the proposed attorney's fees, and of the additional compensation of $3,000 to be paid to plaintiff as class representative.

For the following reasons, the Court finds that the parties have met the fairness requirements of Rule 23 and approves the class action settlement and administration.

**II. DISCUSSION**

**A. Legal Standard**

Federal Rule of Civil Procedure 23 governs the settlement of class actions.  *See Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176-77 (5th Cir. 1975); *Cope v. Duggins*, 203 F. Supp. 2d 650, 652-53 (E.D. La. 2002); *Dumont v. Charles Shwab & Co.*, 2000 U.S. Dist. LEXIS 10906, *14 (E.D. La. 2000).  A class action may not be dismissed or compromised without the district court's

4

approval.  *See* FED. R. CIV. P. 23(e).  Before a court approves a
settlement, the court must find that the proposed settlement is
"fair, adequate, and reasonable."  *See Cope*, 203 F. Supp. 2d at
653 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.
1977)); *Dumont*, 2000 U.S. Dist. LEXIS 10906 at *14 (citing *Parker
v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).  The court
must also make an independent and thorough inquiry into the
reasonableness of the attorney's fees proposed in the settlement
agreement.  *See Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844,
849-50 (5th Cir. 1998).

### B. Fairness, Adequacy, and Reasonableness

The purpose of having the Court conduct an independent
inquiry into the fairness of a class action settlement is to
"ensure that the settlement is in the interest of the class, does
not unfairly impinge on the rights and interests of dissenters,
and does not merely mantle oppression."  *Reed v. General Motors
Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (quoting *Pettway v.
American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir.
1978)).  The Fifth Circuit has identified six factors that should
be considered in assessing whether a settlement is fair,
adequate, and reasonable: (1) the existence of fraud or collusion
behind the settlement; (2) the complexity, expense, and likely
duration of the litigation; (3) the stage of the proceedings and

the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Reed*, 703 F.2d at 172 (citing *Parker*, 667 F.2d at 1209); *Cope*, 203 F. Supp. 2d at 653 (same); *Dumont*, 2000 U.S. Dist. LEXIS 10906 at *16 (same). In considering these factors, a court should keep in mind the strong presumption in favor of finding a settlement fair. *See Cotton*, 559 F.2d at 1331 ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (citing *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975)).

After considering all of the *Reed* factors in light of the circumstances of this action, the Court finds the proposed settlement fair, adequate, and reasonable. First, there is no evidence of fraud or collusion, or that plaintiffs' counsel bargained away substantial rights of the class in exchange for relief to the named plaintiff. *See Bryant v. Universal Services, Inc.*, 2000 U.S. Dist. LEXIS 7619, *3 (E.D. La. 2000) (citing cases). In fact, the parties' joint report states that plaintiff turned down defendant's May 2, 2001 offer of judgment to plaintiff in the amount of $1000 and instead proceeded with the class action. Moreover, the parties reached settlement only

6

after a period of "actively and aggressively" asserting their opposing positions. (Joint Submission for Final Approval at 5.) Because the Court finds no evidence that the settlement was the result of fraud or collusion, this factor weighs in favor of approving the settlement.

The second and third *Reed* factors also weigh in favor of approving the settlement because of the complexity, expense, and likely duration of the litigation, as well as the stage of the proceedings and the amount of discovery completed. At the time settlement was achieved, the parties completed discovery, which included depositions, interrogatories, and requests for production. The action had been set for trial. At that stage, several fundamental issues in the case remained in dispute: whether the defendant violated the FDCPA; whether the alleged violation was merely technical; and whether the alleged violation was willful and clear. Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly. Based on the foregoing, the Court concludes that the complexity, expense, likely duration of the litigation, and amount of discovery completed all favor settlement.

The fourth and fifth *Reed* factors require the Court to consider the factual and legal obstacles to plaintiffs ability to prevail on the merits and their possible range of recovery. In

determining the probability of plaintiffs' success on the merits, the court must compare the terms of the settlement with the likely rewards the class would have received following a successful trial of the case. *See Reed*, 703 F.2d at 172. The court is not to decide the issues or try the case to assess this factor, however, because, "the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* (quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971)). Plaintiff has already demonstrated that the class' claim is actionable because she prevailed on the issue of class certification and defeated defendant's motion to dismiss. The parties disagree, however, as to who would prevail at trial. As noted above, there are several factual and legal issues still in dispute. Moreover, the parties dispute whether plaintiffs would be entitled to statutory damages and whether damages would be less than the settlement amount if defendant were to lose. While raising these uncertainties, the parties do not indicate any reason for the Court to find that plaintiffs would likely receive damages in an amount vastly greater than the settlement amount. Regardless, the Fifth Circuit has made clear that even if a district court finds a "comfortable probability" of plaintiffs' success on the merits, "that factor would not mandate that the order approving the settlement be vacated." *Parker*, 667 F.2d at 1210 n.6. Based on

8

the foregoing, the Court finds that the existence of factual and legal obstacles to plaintiffs' prevailing on the merits favors settlement.

Finally, the Court finds that the opinions of class counsel, class representatives, and absent class members weigh in favor of settlement. Counsel for both plaintiff and defendant concur that the settlement is fair. Further, the parties provided notice of the settlement in accordance with this Court's order. Despite this notice, not one class member objected to the proposed settlement in writing or at the September 4, 2002 hearing. The parties confirmed at the hearing that they had not received any objections from class members.

For the foregoing reasons, the Court concludes that the proposed settlement of this class action is fair, adequate, and reasonable.

### C. Attorney's Fees and Costs

To comply with Rule 23(e), the district court must thoroughly review the attorney's fees agreed to by the parties in the proposed settlement agreement. *See Strong v. BellSouth Telecomm., Inc.,* 137 F.3d 844, 849-50 (5th Cir. 1998). In an FDCPA case, the defendant is liable for "the costs of the action, together with a reasonable attorney's fee" to be determined by the court. 15 U.S.C. § 1692k(a)(3). In *Johnson v. Georgia*

9

*Highway Express, Inc.*, the Fifth Circuit established twelve factors to consider in calculating reasonable fees and costs.[1] *See* 488 F.2d 714, 717-19 (5th Cir. 1974).  The district court should consider the twelve *Johnson* factors in the following framework: it should (1) ascertain the nature and extent of the services supplied by the attorney; (2) determine the value of the services according to the customary fee and the quality of the work; and (3) adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the petitioner's case. *See Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990); *Cope v. Duggins*, 203 F. Supp. 2d 650, 654-55 (E.D. La. 2002).  The first two steps require a "lodestar" analysis, by which the number of hours reasonably expended to perform the legal services is multiplied by a reasonable hourly rate for the attorney providing the services.  *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996); *Von Clark*, 916 F.2d at 258

---

[1] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-19.

(citing *Nisby v. Commissioners Court of Jefferson County*, 798 F.2d 134, 136 (5th Cir. 1986)).

After it has calculated the lodestar, the district court should consider the remaining *Johnson* factors to determine whether the lodestar should be adjusted. *See Forbush*, 98 F.3d at 821; *Nisby*, 798 F.2d at 137. The district court must take caution not to "double count" a *Johnson* factor already considered in calculating the lodestar. *See Von Clark*, 916 F.2d at 258 (citing *Sims v. Jefferson Downs Racing Assn.*, 778 F.2d 1068, 1084 (5th Cir. 1985)). Courts have held, however, that the district court should pay "special heed" to *Johnson* criteria regarding the time and labor involved; the customary fee; the amount involved and the results obtained; and the experience, reputation, and ability of counsel. *See Von Clark*, 916 F.2d at 258 (citing *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982), *modified on other grounds*, 701 F.2d 542 (5th Cir. 1983)(en banc), *overruled on other grounds, Int'l Woodworkers of America, AFL-CIO v. Champion Int'l Corp.*, 790 F.2d 1174, 1175 (5th Cir. 1986)).

To show the court that the claimed hours were in fact reasonable, the plaintiff has the burden of substantiating the hours expended with sufficient clarity. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Watkins v. Fordice*, 7 F.3d

11

453, 457 (5th Cir. 1993). Plaintiff's counsel has satisfied his burden by submitting detailed documentation of a total of 184.80 hours expended at $225 per hour between December 2000 and September 2002. Based on these figures, the lodestar calculation is $41,580.

A reasonable hourly rate for attorney's fees awarded under section 1692k(a)(3) is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. *See Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558-59 (5th Cir. 1998). The plaintiff bears the burden of producing satisfactory evidence that the requested rate is reasonable. *See id.; Von Clark*, 916 F.2d at 259. Satisfactory evidence should include declarations or evidence of rates actually billed and paid by plaintiff's counsel; rates charged by attorneys in similar lawsuits; and the relative skill of the attorney involved. *See Blum*, 465 U.S. at 896 n.11; *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In this case, plaintiff's counsel submits that $225 is his customary hourly rate. He has more than twenty-five years experience, has appeared and argued before the United States Supreme Court and three United States Courts of Appeals, and has contributed to literature on federal civil procedure. In

12

addition to counsel's own assertion, there is evidence that $225 per hour is almost the same as hourly rates found reasonable in similar FDCPA cases. *See Cope*, 203 F. Supp. 2d at 656; *Hagan v. MRS Associates, Inc.*, 2001 U.S. Dist. LEXIS 6789, *11 (E.D. La. 2001) (collecting cases).

Nonetheless, in their settlement, the parties agreed to payment of only $20,000 in attorney's fees and costs. Thus, the results obtained were less than fifty percent of the lodestar calculation of $41,580 plus plaintiff's costs of $260.80. Plaintiff's counsel removed from this figure any charges for photocopying, long distance calls, ground transportation, and computer assisted legal expenses. This adjustment was reasonable given the relatively small amount involved in this lawsuit. The $20,000 figure is equal to or less than fees approved of in similar FDCPA cases. *See id*. In light of these factors, the Court finds plaintiff's counsel's hourly rate of $225 per hour, as well as the final attorney's fee amount of $20,000, fair and reasonable.

The Court now considers the remaining *Johnson* factors to determine whether a downward or upward adjustment from the settled lodestar figure of $20,000 is warranted. The plaintiff's claims and defendant's defenses are not especially novel. Plaintiff's counsel states he did not preclude other employment

13

to work on this case. Counsel worked on a contingent fee basis, which provided for payment of all fees through a settlement or court order. There is no evidence of significant time constraints on counsel beyond regular and expected litigation deadlines. The case was not especially undesirable. Lastly, this was the first attorney client relationship between plaintiff and counsel. In light of these factors, the Court finds no reason to adjust the settled lodestar fee.

Although the $20,000 fee is somewhat disproportate with the $3,000 class recovery, the Fifth Circuit has expressly rejected a rule of proportionality between the fee awarded and the damages recovered in determining the award of attorney fees. *See R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 542 (5th Cir. 1992). Moreover, the parties assert that the money damages are augmented by the fact that defendant agrees to cease contacting employers as he had done in the past.

**D. Incentive Compensation to Plaintiff**

Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation. *See In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997) (collecting cases).

In this case, the parties agree that the named plaintiff

14

participated extensively in the litigation, including submitting to written and oral discovery and opening her finances to inspection and cross-examination.  She missed work when necessary to attend to litigation matters.  The proposed settlement incentive compensation of $3,000 for her efforts and participation falls within the range of incentive compensation that has been approved of in similar cases.  *See, e.g., Cope*, 203 F. Supp. 2d 650, 653 (awarding $4,250 in settlement to named plaintiff when class was awarded $8,000 in settlement). Moreover, when the incentive compensation falls in the modest range of $2,000 to $3,000, it is generally held unnecessary to consider the amount of time and money spent in the litigation and other circumstances relating to costs.  *See The National Association of Consumer Advocates, Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 176 F.R.D. 375 (West 1998).  Therefore, the Court finds the proposed incentive compensation to the named plaintiff fair and reasonable.

## III. CONCLUSION

For the foregoing reasons, the class action settlement agreement, including the proposed payment of attorney's fees and costs and incentive compensation to the named plaintiff, is APPROVED.

15

New Orleans, Louisiana, this 25th day of October, 2002.


SARAH S. VANCE
UNITED STATES DISTRICT JUDGE